United States District Court
For the Northern District of California

1
2
3
4
5                    IN THE UNITED STATES DISTRICT COURT
6                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8   GENEROSO SIAPNO,                          No. C 10-00127 SI
9                Plaintiff,                   **ORDER GRANTING DEFENDANT'S**
                                              **MOTION FOR SUMMARY JUDGMENT**
10       v.
11  MICHAEL J. ASTRUE,
12               Defendant.
                                        /
13
14
15        Plaintiff Generoso Siapno brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial
16  review of a final decision by the Commissioner of the Social Security Administration (SSA), which
17  found that the plaintiff was not disabled, and therefore not eligible for disability insurance benefits.
18  Presently before the Court are the parties' cross-motions for summary judgment.  Having considered
19  the parties' papers and the administrative record, the Court DENIES plaintiff's motion for summary
20  judgment and GRANTS defendant's motion for summary judgment.
21
22                              **BACKGROUND**
23  **I.  Procedural History**
24        On April 6, 2005, plaintiff Generoso Siapno applied for disability insurance benefits under Title
25  II and Part A of Title XVIII of the Social Security Act, alleging that he had been disabled since
26  November 30, 2004.  Administrative Record (AR) 53-55.  The Commissioner of Social Security denied
27  his application initially on June 30, 2005 and also upon reconsideration on May 11, 2006.  AR 19.
28  Plaintiff requested a hearing, and on June 25, 2007, appeared with counsel and testified before an

United States District Court
For the Northern District of California

1   Administrative Law Judge ("ALJ"). *Id.* In a decision dated September 28, 2007, the ALJ found that

2   the plaintiff had not been disabled since November 30, 2004. AR 27. Plaintiff requested review by the

3   Appeals Council, submitting new evidence regarding medical events that transpired after the ALJ's

4   decision, but the request for review was denied on November 23, 2009. AR 5. The plaintiff timely filed

5   the instant action for judicial review, pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), on January 11,

6   2010.

7

8   **II.  Factual Background**

9        **A.  Evidence before the ALJ**

10             **1.  Care by treating physicians**

11       In October 1993, plaintiff suffered from scalp scaling and itching, was diagnosed with a skin

12   condition, "psoraisis," at a clinic and was prescribed topical medication.[1] AR 124. In follow up visits

13   to the clinic in October1994, November 1994, December 1995 and June 1996, plaintiff's skin condition

14   recurred (involving other parts of his body) but was successfully treated with medication, which he was

15   asked to continue. AR120-123. On many of these visits, plaintiff was treated by Dr. Leslie Hilger. AR

16   121-123. Plaintiff continued this treatment for eight years, through December 2003. AR 102-121. In

17   December 2003 and February 2004, plaintiff suffered from "flare ups" of psoraisis on his legs, but the

18   condition responded well to medication. AR 96-97, 101. By August 2004, the psoraisis on plaintiff's

19   legs had improved, but he still had a "red area" above his right eyebrow. AR 94. In October and

20   November 2004, plaintiff's psoraisis continued to improve, and his skin was "99% clear." AR 93. In

21   January 2005, plaintiff developed some psoraitic spots on his legs and feet, but by his next appointment

22   on March 2005, his condition had improved with only one spot on his lower leg. AR 92. In an undated

23   "Certification of Health Care Provider" form, Dr. Hilger stated that plaintiff suffers from severe

24   psoraisis that was "unresponsive to topical" medication and required treatment with oral antibiotics and

25

26

27

28   ───────────────
        [1]  Plaintiff claims that he suffered from psoraisis since the early 1980's. AR 25

United States District Court
For the Northern District of California

steroids.[2]  AR 162.  Dr. Hilger wrote that plaintiff's ability to work full-time was "uncertain" but "ok when remission achieved," that episodes of incapacity due to his chronic condition were "likely but unpredictable," and that during a flare, "disability is total."  AR 162-163.

Plaintiff started treatment at the Department of Veterans Administration (VA) in January 2005. AR 276.  His first visit involved evaluation of his long-standing psoriasis as well as a checkup of arthritis of the knee and spine by Dr. Thanh Nguyen-Dinh.[3]  AR 276-277.  His psoriasis appeared to be controlled with medication in March 2005 and June 2005.  AR 271-272.  On July 12, 2005, plaintiff signed a form, where he stated that he was totally disabled due to a service-connected injury since December 1, 2004, and that he had received a disability rating from the VA on February 3, 2005.  AR 166.  However, the record contains no other evidence of the VA disability rating.

In October 2005, "several hyperkeratotic patches" appeared on plaintiff's leg due to cessation of certain medication, but the condition improved by February 2006 with the resumption of medication. AR 263, 266.  In April 2006, his psoriasis "flared up" again when he "ran out" of medication, which was refilled by Dr. Roubinian.  AR 260-261.  Plaintiff started ultraviolet light treatment for his psoraisis in April 2006, which continued through April 2007.  *See, e.g.*, AR 259, 299.

### 2. Examination and review by non-treating physicians

In June 2005, Dr. Phillip Suster reviewed the plaintiff's medical records and opined that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; could stand, sit or walk (with normal breaks) for about 6 hours in an 8-hour workday; could occasionally climb, stoop, kneel, crouch, and crawl, and frequently balance.  AR 147-154.  Dr. Suster stated that plaintiff's "[p]soraisis responds to treatment and there are no significant deformities at time."  AR 152.  Dr. Suster noticed only early degenerative changes in the X-rays of plaintiff's spine and knees.  *Id.*

On March 21, 2006, the SSA sent plaintiff to an internist, Dr. Jaskaran Momi, for examination

---

[2] Defendant's brief asserts that this form was dated July 12, 2005, but the date does not appear on the form. Def.'s Br. 4:10-13.

[3] Dr. Yih Chang and Dr. Jirayr Roubinian also treated him on various occasions. *See, e.g.*, AR 266.

and evaluation in connection with his disability claim.  AR 183-185.  Dr. Momi noted plaintiff's history

of psoraisis and back and knee pain, and found multiple psoraitic patches all over his body but no active

lesions or psoraisis on his hands.  *Id.*  Dr. Momi's diagnostic conclusions included "psoraisis with no

known psoraisis-related arthritis," "low back pain" possibly due to "early degenerative disc disease,"

and "pain in knee joints possibly due to arthralgia or early arthritis."  AR 185.  Dr. Momi opined that

plaintiff had no limitation on sitting, standing, walking, but could bend or stoop only occasionally.  *Id.*

Dr. Momi further stated that plaintiff had no limitation on reaching, handling, fingering, gripping,

feeling, and that he could lift and carry 25 pounds of weight frequently and 50 pounds occasionally.

*Id.*  Dr. Momi recommended that plaintiff should avoid contact with chemicals or petrochemical

products if he got any skin lesions on his hands.  *Id.*


### B.  The ALJ decision

The ALJ's opinion of September 28, 2007, pursued the five-step analysis for disability

determinations.  At the first step, the ALJ found that the plaintiff had not engaged in substantial gainful

since November 30, 2004.  AR 21.  At the second step, the ALJ found that the plaintiff had the

following "severe" impairments: "psoraisis, early degenerative disc disease of the spine, and

degenerative joint disease of the knees."  *Id.*  At the third step, the ALJ found that none of impairments

or a combination of impairments met or medically equaled any of the listed impairments in 20 CFR Part

404, Subpart P, Appendix 1.  AR 22.  The ALJ acknowledged plaintiff's dermatologist's references to

"flares" of psoraisis, but did not find any evidence that any of the "extensive skin lesions" persisted for

at least three  months despite prescribed treatment, which is the "duration requirement" provided by the

regulations.  *Id.*; *see also* 20 CFR 404, Listing 8.00(G), Subpart P, Appendix 1 (defining "duration

requirement").


### C.  Evidence before the Appeals Council

Plaintiff submitted additional medical evidence to the Appeals Council after the ALJ's adverse

decision.  That evidence showed the following.  In January 2008, plaintiff suffered another flare up

which resulted in "extensive psoraisis on torso, thighs, legs [and] groin."  AR 371.  In February 2008,

plaintiff was prescribed medication and stated that if he used topical medication twice daily, "the skin will be clear." AR 381. By April 2008, his condition had improved with medication. AR 371. In June 2008, the treating dermatologist's report stated that plaintiff continued to have extensive psoriasis, covering 90% of his body, with only his face being spared and he was prescribed a three-month dose of medication for this condition. AR 365-366. By August 2008, plaintiff's dermatologist observed that his skin showed a 97% improvement, with "few papules on extremities and torso," with some hyper-pigmentation in those areas. AR 364. Plaintiff also reported that he was in a motor vehicle accident in May or June 2008, after which he had pain "radiating from neck to left shoulder and all the way to left hand," was unable to "pull up or down with left arm," and had "intermittent numbness and tingling in left hand and left upper extremities." AR 350. Plaintiff reported that these conditions forced him to walk without moving his arms and discontinue weight lifting. *Id.* The Appeals Council denied plaintiff's request for review on November 23, 2009. AR 5-8.

## LEGAL STANDARD

**I. Disability Determination**

Under the Social Security Act, an individual is deemed "disabled" "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). In making a disability evaluation, an Administrative Law Judge uses a five-step sequential evaluation process as established by the Social Security Administration (SSA). 20 C.F.R. § 416.920(a)(4) (2003). If a finding of disabled or not disabled can be made at any step of the process, the ALJ will not proceed to the next step. *Id.* "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1222 (9th Cir. 2009).

In the first two steps of the evaluation, the claimant must establish that he or she (1) is not performing substantial gainful activity ("SGA") and (2) is under a "severe" impairment. 20 C.F.R. § 416.920(a)(4)(i)-(ii). An impairment must have lasted or be expected to last twelve months in order to be considered severe. *Id.* § 416.909. In the third step, the claimant must establish that his or her

impairment meets or medically equals a listed impairment described in the administrative regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's impairment does not meet or equal one of the listed impairments, before proceeding to the fourth step, the ALJ is to make a residual functional capacity ("RFC") determination based on all the evidence in the record; this determination is used to evaluate the claimant's work capacity for steps four and five. *Id.* § 416.920(e). In step four, the claimant must establish that his impairment prevents him from performing relevant work he did in the past. *Id.* § 416.920(a)(4)(iv). In the fifth step, the Commissioner must demonstrate that the claimant is able to do other work, and that there are a significant number of jobs in the national economy that claimant can do. *Id.* §§ 416.920(a)(4)(v), (g); 416.960(c)). In making this step-five determination the ALJ "may rely on the decisional grids listed at 20 C.F.R. Part 404, Subpart P, Appendix 2, or alternatively, the ALJ can present a hypothetical question that describes the claimant's limitations to a V[ocational] E[xpert]." *Bray*, 554 F.3d at 1223 n.4.

**II. Standard of Review**

A district court's review of a disability determination is limited, and a final administrative decision may be altered "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Substantial evidence is that relevant evidence in the entire record "which a reasonable person might accept as adequate to support a conclusion." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Substantial evidence consists of "more than a mere scintilla but less than a preponderance." *Young v. Sullivan*, 911 F.2d 180, 181-183 (9th Cir. 1990). The Court must consider the entire record, including evidence that both supports and detracts from the ALJ's decision. *See Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). However, the ALJ's decision must be upheld if the evidence is susceptible to more than one rational interpretation. *Allen v. Secretary of Health and Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984).

**DISCUSSION**

Plaintiff moves for summary judgement, requesting that the decision by the Commissioner be

United States District Court
For the Northern District of California

reversed on two grounds.  First, plaintiff contends that the ALJ failed to consider whether his psoraisis, alone or in combination with his back and knee pain, was "medically equivalent" to the impairment in Listing 8.05 of 20 C.F.R. § 404, Subpart P, Appendix 1.  Second, plaintiff asserts that he received a 100% disability rating from the Veterans Administration, and that the ALJ allegedly failed to grant sufficient deference to this purported VA rating.  Defendant opposes plaintiff's motion and makes a cross-motion for summary judgment, requesting that the Court affirm the Commissioner's decision.

**I. The ALJ's consideration of "medical equivalence" under Listing 8.05**

Plaintiff argues that the ALJ failed to determine whether Mr. Siapno's psoraisis alone achieved medical equivalence of the 8.05 listing for "dermatitis," pointing to the "persistence" of his psoraisis over time and "its extent throughout his body."  Pl.'s Br. 8:23-25; 10:3-5.  Plaintiff also argues that the ALJ "failed to consider the effect of the combination of his chronic, persistent, and extensive condition with his low back and knee pain."  *Id.* at 10:5-6.

As an initial matter, the burden of proof is on plaintiff to establish that his impairments meet or equal a listing.  *See, e.g., Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).  "Medical equivalence" will be found "if the medical findings are at least equal in severity and duration to the listed findings," and equivalence is determined on the basis of a comparison between the "symptoms, signs and laboratory findings" about the claimant's impairment as evidenced by the medical records "with the medical criteria shown with the listed impairment."  20 C.F.R. § 404.1526; *see also Marcia v. Sullivan*, 900 F.2d 172, 175-176 (9th Cir. Cal. 1990).

In order to find medical equivalence based on a "combination of aliments," the Ninth Circuit has ruled that the plaintiff must either offer "a theory, plausible or otherwise, as to how [the plaintiff's multiple impairments] combined to equal a listed impairment" or point to "evidence" that shows that his combined impairments equal a listed impairment.  *Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir. 2006); *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2000).  Here, plaintiff has not advanced any theory or argument explaining how his psoraisis combines with the back and neck pain to equal 8.05 or any

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

other listing.[4]   Nor has he cited to any evidence in support of his argument.  Plaintiff's argument regarding the "combination" of his psoriasis and back and knee pain, therefore, fails.  *See Lewis v. Apfel*, 236 F.3d at 514 (rejecting plaintiff's argument that the ALJ erred when he failed to consider the combined effects of impairments, where plaintiff offered no theory or evidence as to how his impairments combined to equal a listed impairment).

Plaintiff also argues that his psoriasis alone equals Listing 8.05, however plaintiff points to no medical evidence showing that his impairments are at least equal in severity and duration to the conditions listed in 8.05.  *See Marcia v. Sullivan*, 900 F.2d at 175-176.  SSA impairment Listing 8.05 is defined as follows: "[d]ermatitis (for example, psoriasis, dyhidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis), with extensive skin lesions that persist for at least for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. § 404, Listing 8.05 of Subpart P, Appendix 1.   However, Listing 8.00(C)(1) defines "extensive skin lesions" to be those involving "multiple body sites or critical body areas, and result in a serious limitation." 20 C.F.R. § 404, Listing 8.00(C)(1) of Subpart P, Appendix 1.  The Listing provides several non-exclusive examples of extensive skin lesions that result in a serious limitation, such as "lesions that interfere with the motion of joints or use of extremities", lesions on the palms of both hands that seriously limit one's ability to "perform fine and gross motor movements", and "lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit" one's ability to ambulate.  *Id.*  Plaintiff has not argued or shown that his psoraisis resulted in any such serious limitation.

Further, Listing 8.00(C)(2) states that if a claimant has frequent flareups, his impairment may be medically equal to a listing even though he has some periods during which the condition is in remission. 20 C.F.R. § 404, Listing 8.00(C)(2) of Subpart P, Appendix 1.  The SSA has to consider the frequency and seriousness of flareups, how quickly they resolve, and how claimant functions between flareups to determine whether he has "been unable to do any gainful activity for a continuous period of at least 12 months or can be expected to be unable to do any gainful activity for a continuous period of

---

[4]  The ALJ, in finding that plaintiff does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments, held that plaintiff's musculoskeletal impairments did not meet or equal listings 1.02 or 1.04.  AR 22.  Plaintiff makes no argument that his impairments alone or in combination achieved medical equivalence under those listings.

at least 12 months." *Id.* While plaintiff argues that the ALJ ignored evidence of the increasing frequency and severity of plaintiff's flareups, plaintiff does not point to any evidence in the record that would establish that due to his psoraisis, plaintiff has been unable or can be expected to be unable to do any gainful activity for a twelve month period.

Finally, Listing 8.00(G) provides that the extensive skin lesions "must persist for at least 3 months despite continued treatment as prescribed" in order to meet the "duration requirement." *Id.* at Listing 8.00(G) of Subpart P, Appendix 1. "By persist, we mean that the longitudinal clinical record shows that, with few exceptions, your lesions have been at the level specified in the listing." *Id.* The record does not show that plaintiff's psoraisis persisted at the "level specified in the listing" for at least 3 months despite continued treatment as prescribed.

For the foregoing reasons, the ALJ did not err in finding that plaintiff's psoraisis does not meet or equal Listing 8.05. AR 22.

**II. The ALJ's Consideration of the VA Disability Rating**

Plaintiff argues that "the ALJ failed to grant sufficient deference" to a purported VA finding that plaintiff was one hundred percent disabled. Plaintiff's Motion 10:10-12. The Court was unable to find any disability rating that was actually issued by the VA within the administrative record. While plaintiff points to a form where he himself asserts that he is "100% disabled," this does not constitute a disability rating that was issued by the VA. AR 166.[5] Therefore, there was no error in the ALJ's decision with respect to the purported VA rating.

///

---

[5] Plaintiff cites to this document at "Tr. 166," but appears to be referring to page 166 of the Administrative Record. AR 166.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court finds that the ALJ's decision regarding plaintiff's alleged disability was not based on legal error and was based on substantial evidence.   Therefore, the Court DENIES plaintiff's motion for summary judgment and GRANTS defendant's motion for summary judgment.  (Docket Nos. 11 and 12).

**IT IS SO ORDERED.**

Dated: December 23, 2010

_____
SUSAN ILLSTON
United States District Judge